**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN RE:<br><br>    Charles T Guider,<br><br>                              Debtor. | Case No. 13-30913<br><br>Judge Deborah L. Thorne<br><br>Chapter 13<br><br>Trustee - Marilyn Marshall |

**NOTICE OF MOTION**

**TO:**   Ch 13 Trustee, Marilyn Marshall\*    Attorney for Ocwen Loan Servicing,
        United States Trustee\*                     Gloria Tsotsos, Codilis & Associates\*

     **PLEASE TAKE NOTICE** that on Wednesday, August 30, 2017, at 9:30 a.m., or as soon thereafter as counsel may be heard, I will appear before the Honorable Deborah L. Thorne, Bankruptcy Judge, or any other judge sitting in his stead, in Room 613, the courtroom usually occupied by her, in the United States Courthouse, 219 S. Dearborn, Chicago, Illinois and then and there present Debtor's MOTION FOR DETERMINATION OF FINAL CURE AND PAYMENT UNDER FED. R. BANKR. P. 3002.1 AND FOR OTHER RELATED RELIEF, a copy of which is attached hereto, at which time and place you may appear if you see fit.


                                                                                     _/s/ Daniel Lindsey_
                                                                                      Daniel Lindsey



Daniel Lindsey
Attorney for Debtor
ARDC No. 6211163
LAF
120 South LaSalle Street, Suite 900
Chicago, IL 60603
Phone: 312.347.8365
dlindsey@lafchicago.org

## **CERTIFICATE OF SERVICE**

     I hereby certify that the foregoing Notice and the attached Motion or Document(s): (a) was filed with the court on this the 23rd day of August, 2017, and that the persons indicated by an asterisk (*) are registrants with the Court's CM/ECF system and have, pursuant to Fed. R. Bankr. P. 7005 and 9036, and §II.B.2 of the Court's Administrative Procedures waived the right to receive notice of hearings and service of documents by personal service or first class mail in this case and consented to receive notice and service electronically; (b) was served on the persons indicated with a dollar sign ($) on the service list by certified mail; and (c) was served on all other persons listed above and/or in the attached service list, by first class mail to the address(es) listed, on this the 23rd day of August, 2017.

                                                          */s/ Daniel Lindsey*
                                                          Daniel Lindsey

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN RE:<br><br>  Charles T Guider,<br><br>                                  Debtor. | Case No.  13-30913<br><br>Judge Deborah L Thorne<br><br>Chapter 13<br><br>Trustee - Marilyn Marshall |

**MOTION FOR DETERMINATION OF FINAL CURE AND PAYMENT
UNDER FED. R. BANKR. P. 3002.1, AND FOR OTHER RELATED RELIEF**

Debtor, Charles T. Guider, moves the Court pursuant to §§ 1322, 1327, and 1328 of the Bankruptcy Code, and Bankruptcy Rule 3002.1(h), for the entry of an order in this case to declare the mortgage loan currently serviced by Ocwen Loan Servicing LLC ("Ocwen") to have been cured by the completion of the Debtor's chapter 13 plan and to be current as of the date of entry of the order granting this Motion.

**I.     Introduction.**

Debtor completed his three-year chapter 13 plan, and the Trustee filed a Notice of Final Cure Payment.  Ocwen filed a Response to the Trustee's Notice of Final Cure Payment alleging that, even after making three years of payments and completing his confirmed plan, Debtor nonetheless still owes Ocwen the exorbitant sum of $19,027.81 ($6,125.49 in prepetition default payments and $12,903.22 in postpetition mortgage payments).

As detailed below, Ocwen's claim is highly inflated, and its numbers are not justified.  Throughout the course of this bankruptcy, Ocwen has failed to file required notices, failed to properly calculate and credit escrow payments, failed to

properly calculate monthly mortgage payments, and impermissibly sought to collect alleged prepetition debt to which it was not entitled.

In all of these ways, Ocwen has demonstrated the same type of shoddy business practices identified by the Consumer Financial Protection Bureau ("CFPB") and by numerous state banking regulators subsequent to extended investigations of Ocwen.  As the result of such investigations, the CFPB recently sued Ocwen in federal district court.[1]  In addition, numerous state banking regulators have issued cease and desist orders curtailing Ocwen's business practices in their states.[2]  The type of systemically negligent business practices alleged against Ocwen include the same types of practices present here, namely, botched escrow accounts, inaccurate and incomplete financial records, and unauthorized proofs of claim.

Correcting Ocwen's math is no easy task.  Yet Debtor has attempted to do so, based on his mortgage documents, Ocwen's servicing documents, and public tax records.  Debtor has shown that, at most, he owes Ocwen about $6,000, rather than Ocwen's highly inflated figure of $19,000, a sum sought by Ocwen in violation of the automatic bankruptcy stay.  As a sanction for its violation of the automatic stay, Ocwen should be barred from collecting any of its claimed arrearage, and Debtor should instead be deemed current as of the entry of the court's order granting this Motion.

---

[1] *CFPB v. Ocwen*, 17-cv-80495 (S.D. Fla.) (Complaint filed Apr. 20, 2017), available at: http://files.consumerfinance.gov/f/documents/20170420_cfpb_Ocwen-Complaint.pdf;
[2] *See, e.g., In the Matter of Ocwen Loan Servicing, LLC*, Docket NO. 17:025:MBB (N.C. Commissioner of Banks) (Cease and Desist Order filed Apr. 20, 2017), available at: https://www.housingwire.com/ext/resources/files/Editorial/Documents/17_025.pdf).

## II.     Statement of Facts.

Debtor filed his chapter 13 petition on August 1, 2013.  Debtor's chapter 13 plan provided for a cure of the debtor's prepetition mortgage default and the maintenance of current mortgage payments during the plan pursuant to 11 U.S.C. § 1322(b)(5).  Debtor's prepetition mortgage default was determined by the order confirming Debtor's chapter 13 plan, over the mortgagee's unsubstantiated Objection, in the amount of $13,936.20.  Case Document Nos. 23, 31, 34.

Debtors' chapter 13 plan providing for payment of that amount and maintenance of current payments was confirmed by order of the Court dated October 24, 2013.  That order was and is binding on Ocwen under 11 U.S.C. § 1327.

Almost a year later, on August 28, 2014, Ocwen filed a proof of claim alleging prepetition mortgage arrears of $20,061.51.  That claim was never allowed.  Claim 9-1.

After the debtor completed his plan payments, on July 14, 2017, the Trustee filed a Notice of Final Mortgage Cure Payment, pursuant to Fed. R. Bankr. P. 3002.1(f).  Case Document No. 73.  The amount established as the prepetition arrearage to be cured by the Debtor has been paid in full, as confirmed by the Trustee's Notice of Final Cure Payment.  The Notice of Final Cure Payment filed by the Trustee informed the mortgage servicer of its obligation to respond and to file a statement indicating whether it agrees that: (a) the Debtor has paid in full the amount required to cure the default on the claim, and (b) the Debtor is otherwise current on all payments consistent with 11 U.S.C. § 1322(b)(5).

In response to the Trustee's Notice, Ocwen filed a statement indicating its position that the debtor had not paid the amount required to cure the prepetition default, and asserting that the total prepetition amount still unpaid was $6,125.49. Ocwen also stated that the Debtor remains in arrears on postpetition payments in the amount of $12,903.22, for a total remaining debt of $19,027.81. Exhibit 1 (Form 4100R, Response to Notice of Final Cure Payment).

### III. Argument.

#### A. Debtor does not owe any prepetition arrears.

Ocwen claims with no support whatsoever that it is owed $6,125.49 in prepetition arrears. The history of this case shows precisely the opposite: that Ocwen is not entitled to *any* prepetition arrears beyond those which it has been properly paid by the Trustee as per Debtor's confirmed chapter 13 plan.

Pursuant to 11 U.S.C. § 1327(a) "The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." As stated by the Seventh Circuit Court of Appeals, "[i]t is a well-established principle of bankruptcy law that a party with adequate notice of a bankruptcy proceeding cannot ordinarily attack a confirmed plan." *In re Harvey*, 213 F.3d 318, 321 (7th Cir. 2000) (citing 11 U.S.C. § 1327(a)). Thus, "[t]he confirmed chapter 13 plan is binding on all parties until it is modified or completed." *In re McDonald*, 336 B.R. 380, 383 (Bankr. N.D. Ill. 2006) (citing *In re Casper,* 154 B.R. 243, 248 (N.D.Ill.1993)).

Under 11 U.S.C. § 1322(b)(5), the plan may "provide for the curing of any default within a reasonable time" and also for maintenance of payments due on secured debt while the case is pending.  Section B(2) of Debtor's confirmed plan unambiguously provided for reinstatement of the mortgage loan upon curing the specified default amount set forth in Section E(5), and upon making all required postpetition mortgage payments.  Exhibit 2 (Debtor's Confirmed Chapter 13 Plan).

Ocwen claims that the arrearage amount listed in the plan was incorrect. However, Section E(5) of the plan clearly provides that the arrearage amount set forth therein would be paid by the trustee "regardless of contrary proofs of claim." Exhibit 2.  Additionally, the only proof of claim filed by the mortgagee[3] was filed almost one year after the plan was confirmed.  Claim 9-1.  The mortgagee never asserted the proof of claim as part of its Objection to the plan.  While the mortgagee filed an Objection to Confirmation on September 23, 2013, it provided no support for the arrearage amount alleged in that Objection.  Case Document No. 23.  Debtor's plan was confirmed over that Objection, and the mortgagee took no further action regarding said Objection. By failing to challenge confirmation, and by raising no objection to the plan after confirmation, the mortgagee and its servicing agent are bound by the Debtor's confirmed plan. *Matter of Chappell,* 984 F.2d 775, 782 (7th Cir. 1993) ("Creditors must object to confirmation, appear at hearings or otherwise put disputes before the bankruptcy court in order to raise objections. If the creditor fails to do so, the creditor is bound by the Chapter 13 Plan.")

---

[3] The mortgagee is Deutsche Bank National Trust Company.  Its servicing agent is Ocwen.

–5–

Debtor's chapter 13 plan provided for the full repayment of prepetition mortgage arrears in the amount of $13,936.20.  Exhibit 2.  Because there is no dispute that the arrears specified in the Debtor's Plan have been paid in full, Debtor's prepetition default amount has been cured as permitted under 11 U.S.C. § 1322(b)(5), and Ocwen has no right to any further payments of alleged prepetition debt.  *See McDonald*, 336 B.R. at 383–85.

To be clear, it does not matter whether the prepetition arrears were in the nature of escrow payments owed by the borrower (to pay for taxes and/or hazard insurance).  As discussed below, it appears that Ocwen has continued to try to collect prepetition escrow debt *in addition to* the approved payments made to Ocwen by the Trustee.  But this is prohibited just as much as it would be prohibited for Ocwen to take self-help measures to collect additional amounts of principal and interest *in addition to* the approved payments made to Ocwen by the Trustee.

Taxes and other escrow items paid by a mortgage servicer prior to the bankruptcy filing constitute a prepetition claim that must be satisfied through the debtor's chapter 13 plan. *In re Harris*, 2012 WL 1410264 (Bankr. C.D. Ill. 2012); *In re Beaudot*, 455 B.R. 671 (Bankr. M.D. Tenn. 2011).  As such, collecting on a prepetition escrow deficiency claim from postpetition escrow payments is a violation of the automatic stay. *See In re Rodriguez*, 629 F.3d 136, 137–143 (3d Cir. 2010).

Bankruptcy Rule 3001 requires that the servicer attach an account statement as of the date of the petition. Fed. R. Bankr. P. 3001(c).  Consistent with these procedures, Ocwen attached an "Escrow Account Disclosure Statement – Bankruptcy Projections for the Year" dated August 6, 2013 as an exhibit to its

–6–

postconfirmation proof of claim. Exhibit 3 (Claim No. 9-1 Part 2), at pp. 23–24. As shown in Ocwen's August 6, 2013 Escrow Account Disclosure Statement, Debtor's past due account was "zeroed out" because the arrearage was payable through the plan. Debtor's prepetition escrow balance was payable as an arrearage over the life of the plan, along with other prepetition payments, fee, and other charges due. (*Id*.; *see also* 24 C.F.R. § 3500.17 (defining "Escrow Deficiency" and other relevant terms used in escrow account statements under RESPA).) Going forward with its next installment payment due in September 2013, Debtor did not owe any prepetition debt to Ocwen – escrow debt or otherwise – other than the arrearage set forth in the confirmed plan, which has now been paid in full.

### B. Debtor owes at most about $6,000 in postpetition arrears.

Ocwen also claims in its Notice that Debtor owes $12,903.22 in postpetition arrears. Ocwen supports this claim with a ledger attached to its Response to Notice of Final Cure Payment, showing postpetition payments due in the amount of $49,614.02, with Debtor having made payments in the lesser amount of $36710.80, leaving a difference of $12,903.22. Exhibit 1.

Ocwen's ledger is, however, significantly flawed.

Pursuant to the Note, as modified, Debtor's monthly principal and interest payment in August 2013, when his bankruptcy was filed, was $664.89. Exhibit 3, at p. 5. At the time of filing, Ocwen was charging Debtor $421.41 per month for escrow (taxes and insurance). Exhibit 4 (Notice of Payment Change dated October 12, 2016). Adding together principal and interest and escrow, the total monthly

–7–

payment amount charged by Ocwen at the beginning of Debtor's bankruptcy was $1,086.30.[4]

The problem is that Ocwen continued to charge this same monthly amount of $1,086.30 through November 2016, even though it should have reduced the monthly payment amount as of May 2014, when Debtor's taxes dropped to zero (due to his senior status). Exhibit 4. Much later, in December 2016, Ocwen finally reduced the escrow payment all the way down to $164.77 (for insurance only, since taxes had dropped to zero). *Id.* But this means that Ocwen overcharged Debtor for two and a half years, grossly inflating his purported postpetition deficiency.

The fact that Debtor's taxes dropped to zero is made clear from Ocwen's own documents. The Bankruptcy Account History attached to Ocwen's Notice of Mortgage Payment Change shows that taxes dropped to zero after the last installment of Cook County taxes paid in April 2014. *Id.* This reduction (elimination) of taxes is confirmed by the public record of Debtor's tax status. Exhibit 5 (Cook County Tax Portal Record for PIN 16-23-214-007-0000). And yet, Ocwen continued to impose the same $421.41 escrow charge against Debtor's account through November 2016 (30 months later). Exhibit 4.

The reason this gross error was not caught earlier is because Ocwen failed to file notices of payment change as required by bankruptcy law. Pursuant to Bankruptcy Rule 3002.1, Ocwen was required to give notice of any future change in

---

[4] This figure is slightly higher than the figure of $1,082.45 stated by Debtor in Section C of the confirmed plan. Exhibit 2. As discussed above, it is the plan which controls. Nonetheless, Debtor will forego focusing on Ocwen's small indiscretions, since it is more important to focus on its large ones.

–8–

the payment amount to the Debtor, Debtor's counsel, and the Trustee. (Fed. R. Bankr. P. 3002.1(b); *see also* Fed. R. Bankr. P. 3002.1(i) (actions that courts can take if lender fails to comply).) These notices are critical because they allow debtors, counsel, and Trustees to determine during the course of the bankruptcy whether the servicer is charging the correct amount for principal, interest, and escrow. If the servicer is allowed instead to wait and file a comprehensive "retroactive" notice at the end of the bankruptcy case, the debtor has no way to police the amounts claimed due and owing as they are being charged during the course of the bankruptcy.

This is exactly what Ocwen has done. Ocwen only filed one payment change notice, near the end of the bankruptcy, on October 12, 2016, despite the fact that the controlling loan modification includes interest rate and payment changes effective March 2015 and March 2016. Exhibit 3. Ocwen may try to plead "no harm, no foul," since these payment changes were scheduled to *increase* the Debtor's interest rate, and thus *increase* his principal and interest payments. But these monthly payment increases were slight (as shown on the loan modification schedule), and they would have been far outweighed by the escrow reductions which Ocwen failed to implement for two and a half years. Those reductions would have been in the amount of $256.64 per month ($421.41 - $164.77). Exhibit 4. Had Ocwen filed the payment change notices it was supposed to have filed (and had those notices been accurate), they would have notified Debtor, counsel, and the Trustee of the reduced monthly amounts owed.

–9–

Those reduced monthly amounts owed are properly reflected in the "Corrected Ledger" prepared by Debtor and attached hereto as Exhibit 6. The first four columns reproduce the four columns included in Ocwen's ledger, attached to its Response to Notice of Final Cure Payment. The final column ("Adjusted PITI") shows what Mr. Guider *should* have been charged, as follows:

1. From September 2013 - April 2014: the amount charged by Ocwen ($1,086.30).[5]

2. From May 2014 – February 2015: the original principal and interest figure of $664.89 plus the reduced escrow payment of $164.77 ($829.66), i.e., $256.64 per month less than what Ocwen charged.

3. From March 2015 - February 2016: the increased principal and interest figure of $726.13 plus the reduced escrow payment of $164.77 ($890.90), i.e., $195.40 per month less than what Ocwen charged.

4. From March 2016 – July 2017: the increased principal and interest figure of $741.27 plus the reduced escrow payment of $164.77 ($906.04), i.e., $180.26 per month less than what Ocwen charged for the months March 2016 through November 2016.

Based upon the above amounts, which are set forth in Column E of the Corrected Ledger, it is apparent that Debtor only owed $43,080.48 during the term of the bankruptcy. *Id.* Because Debtor made $36,710.80 in postpetition payments, postpetition arrears are only $6,369.68. *Id.*

On the one hand, it does not matter why Ocwen botched Debtor's servicing records. Whether done intentionally or not, and regardless of motive, this court should correct Ocwen's faulty accounting.

---

[5] *But see infra* at note 4.

On the other hand, it appears that Ocwen imposed inflated escrow charges so that it could collect prepetition escrow charges. If so, this amounts to a violation of the automatic stay. (*See* 11 U.S.C. §§ 362(a)(3), (a)(4); *In re Campbell,* 361 B.R. 831 (Bankr.S.D.Tex.2007) (creditor violated automatic stay when it collected prepetition property taxes through postpetition payments); *In re Rathe,* 114 B.R. 253 (Bankr. D. Idaho 1990) (creditor may not apply plan or direct payments other than as set forth in the confirmed plan; application of payments to post confirmation charges without court permission constitutes a collateral attack on the order of confirmation).) *See also In re Rodriguez*, 629 F.3d 136, 138–42 (3d Cir. 2010) (holding that unpaid escrow amounts, including escrow payments due under the terms of the mortgage but not yet expended by the lender, were part of the lender's prepetition bankruptcy claim and could not be recovered from postpetition escrow payments; case remanded for determination as to whether Countrywide was in contempt) (*citing Campbell v. Countrywide Home Loans, Inc.*, 545 F.3d 348 (5th Cir. 2008)).

Ocwen's Bankruptcy Account History shows two instances of adjustments to Debtor's escrow account, each designated "POC Escrow Shortage Adjustment." These occurred, first, in July 2015, when Ocwen adjusted Debtor's escrow balance down from $5,300.78 to $-7,584.01, and, second, in September 2016, when Ocwen adjusted Debtor's escrow balance down from $10,012.87 to $3,062.17. Exhibit 4. These adjustments refer to Ocwen's "POC," or proof of claim, in which it alleged prepetition arrears, so these adjustments relate to Debtor's alleged prepetition debt.

–11–

As such, it appears that Ocwen was illegally overcharging escrow payments, building up an artificially inflated escrow balance, and then using that balance to pay itself back for alleged prepetition debt. To add insult to injury, Ocwen generated an inflated year-end escrow balance of $3,904.99, as of November 2016. Exhibit 4. According to Ocwen's own Bankruptcy Account History and Projections for the Coming Year, that balance is twice as high as it needs to be. Exhibit 4. As such, Debtor should get a further return or credit of $1,927.99 (the surplus amount stated on Ocwen's Projections for the Coming Year). Subtracting this figure from the postpetition deficiency of $6,369.68 identified above, Debtor would only owe $4,441.69.

In addition, Ocwen should be required to turn over or apply to Debtor's account all postpetition payments that it seized in violation of the confirmed plan and constituted property of the estate pursuant to 11 U.S.C. § 1306. *See U.S. v. Whiting Pools, Inc.,* 462 U.S. 198 (1983) (ordering IRS to turn over seized property determined to be property of estate); *Matter of Wischan,* 77 F.3d 875 (5th Cir. 1996); *see also,* 11 U.S.C. §§ 105(a), 541, 542(a), and 1306.

It is impossible to determine this exact number from Ocwen's records. The records are both ambiguous (as with the "POC Escrow Shortage Adjustment" itemizations discussed above) and self-contradictory.[6] Nonetheless, having arrived

---

[6] Ocwen states no less than three different mortgage payments amounts due for the period beginning March 2016. On its Ledger, Ocwen states the figure of $1,086.30 running through November 2016. And yet Ocwen sent Mr. Guider an interest rate statement dated January 12, 2016, stating that his payment would change to $906.06 as of March 2016. Exhibit 7. And yet Ocwen *also* sent Mr. Guider a monthly mortgage statement (for June 2016) with a figure of $1,147.54. Exhibit 8.

–12–

at the figure of $4,441.69 cited above, it is not unlikely that Ocwen has improperly seized and applied (at least) that sum toward repaying itself alleged prepetition arrears. As such, it seems an appropriate sanction to require Ocwen to forego that sum, the net result being that Debtor is deemed to be current on his mortgage and escrow payments as of the date of the entry of the court's order granting this Motion.

WHEREFORE, Debtor request this Court enter an Order:

a. Declaring that Debtor's mortgage loan has been cured so that it is current as of the date of the order granting this Motion and that Debtor's remaining balance due on the mortgage is the amount that would have existed if no default had occurred.

b. Declaring that any amounts for prepetition arrearages or postpetition payments that mortgagee may allege Debtor owes as of the date of the order granting this Motion be deemed cured by completion of the plan and therefore canceled and discharged.

c. Declaring that any attempt to collect these discharged amounts be deemed to be a willful violation of the discharge injunction and 11 U.S.C. § 524(i), and contempt of the orders of this Court.

d. Awarding reasonable attorney fees to the Debtor pursuant to Fed. R. Bankr. P. 3002.1(i) for their expenses in bringing this proceeding as a result of Ocwen's failure to provide debtors with the information required by Fed. R. Bankr. P. 3002.1(b).

        Respectfully submitted,

        */s/ Daniel Lindsey*
        Daniel Lindsey

Daniel Lindsey
Attorney for Debtor
ARDC No. 6211163
LAF
120 South LaSalle Street, Suite 900
Chicago, IL 60603
Phone: 312.347.8365
dlindsey@lafchicago.org